UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROBERT SHELTON TOOMER                    CIVIL ACTION

VERSUS                                   NUMBER: 09-7446

WARDEN BURL CAIN                         SECTION: "I"(5)


## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2E(A), presently before the Court is the 28 U.S.C. §2254 application for federal habeas corpus relief of petitioner, Robert Shelton Toomer, and the State's response thereto. (Rec. docs. 1, 7). Having determined that an evidentiary hearing is not necessary, it is recommended, for the reasons that follow, that the instant petition be dismissed with prejudice.

## PROCEDURAL HISTORY

Petitioner Toomer is a state prisoner who is presently incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. Toomer was charged by grand jury indictment with the second-degree murder of his former girlfriend, Felicia Fox, a violation of La. R.S. 14:30.1. Toomer entered a plea of not guilty

and was tried before a jury in the Twenty-Second Judicial District
Court for the Parish of Washington. After considering the
evidence, the jury found Toomer guilty as charged. The trial court
sentenced Toomer to a term of life imprisonment at hard labor
without benefit of probation, parole, or suspension of sentence.
On March 24, 2005, the Louisiana First Circuit Court of Appeal
affirmed Toomer's conviction and sentence. State v. Toomer, 898
So.2d 638 (Table), No. 2004-KA-1603 (La. App. 1 Cir. 2005)
(unpublished opinion).[1] Pursuant to Rule X, §5(a) of the Rules of
the Louisiana Supreme Court, Toomer had thirty days, from March 25,
2005, until April 25, 2005, in which to timely seek writs from the
Louisiana Supreme Court. See, e.g., Butler v. Cain, 533 F.3d 314,
317 (5th Cir. 2008).[2] However, as evidenced by the postal meter
stamp on the envelope, petitioner's writ application, No. 2005-
KH-1476, to the Louisiana Supreme Court was not mailed until May 2,
2005, six days after his April 25, 2005 deadline.[3] That

---

[1]A copy of the state appellate court's unpublished opinion
is contained in the State rec., vol. 1 of 6.

[2]Because April 24, 2005, the actual day on which the thirty-
day time limit expired, fell on a Sunday, Toomer had an extra
day, until April 25, 2005, within which to timely file a writ
application with the Louisiana Supreme Court.

[3]A copy of Toomer's writ application, including a copy of
the envelope in which the writ application was mailed, is
contained in the State rec., vol. 1 of 6. In Causey v. Cain, 450
F.3d 601, 604-605 (5th Cir. 2006), the United States Fifth

application was denied on March 10, 2006. <u>State ex rel. Toomer v.</u> <u>State</u>, 925 So.2d 499, No. 2005-KH-1476 (La. 2006). Toomer did not file a petition for a writ of certiorari to the United States Supreme Court.

On April 21, 2006, counsel filed on Toomer's behalf an application for post-conviction relief with the state district court. (St. rec., vol. 1 of 6). Toomer's application was denied by the state district court on August 21, 2008. <u>State v. Toomer</u>, No. 02-CR9-85062 (22nd JDC. Aug. 21, 2008) (unpublished decision) (St. rec., vol. 1 of 6). On December 19 2008, the state appellate court, in a two-word decision, "[w]rit denied", likewise rejected Toomer's application for post-conviction relief. <u>State v. Toomer</u>, No. 2008-KW-2224 (La. App. 1 Cir. Dec. 19, 2008) (unpublished decision). (St. rec., vol. 1 of 6). The Louisiana Supreme Court, on November 20, 2009, again denied a writ application from Toomer,

---

Circuit determined that the federal "mailbox rule" should be employed when determining the filing date of state court pleadings for purposes of determining the timeliness of a federal habeas petition. Under the "mailbox rule," the date a <u>pro</u> <u>se</u> prisoner's pleading is provided to prison officials for mailing is the date it is considered filed. <u>See</u> <u>Cooper v. Brookshire</u>, 70 F.3d 377, 379 (5th Cir. 1995). Generally, a court will look to the date a prisoner signed his pleading as the earliest date the pleading could have been provided to prison officials for mailing. <u>See</u> <u>Colarte v. Leblanc</u>, 40 F.Supp.2d 816, 817 (E.D. La. 1999). In this instance, however, Toomer did not date his writ application to the Louisiana Supreme Court. Accordingly, the Court will utilize the post-marked date of the pleading as Toomer's filing date.

this time refusing to review the denial of post-conviction relief. <u>State v. Toomer</u>, 25 So.3d 783 (2009), No. 2009-KP-0104 (La. 2009).

On November 23, 2009, counsel filed on Toomer's behalf the instant habeas corpus application. In his habeas application, Toomer claims that he received ineffective assistance of counsel and offers four arguments in support of his ineffectiveness claim.

**<u>TIMELINESS</u>**

Under 28 U.S.C. §2244(d)(1), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L.No. 104-132, 110 Stat. 1214 (1996)(effective April 24, 1996), state prisoners like Toomer have one year from the date that their convictions become final to timely seek federal habeas corpus relief. Section 2244(d)(2) further provides that the time during which a prisoner has a properly filed application for post-conviction relief or other collateral review pending before the state courts is not counted against the one-year limitation period. Although the State has done so in this case, the one-year time bar may be raised by the Court <u>sua</u> <u>sponte</u>. <u>Kiser v. Johnson</u>, 163 F.3d 326, 328-29 (5th Cir. 1999).

Toomer's conviction and sentence became final on April 25, 2005, when his time for seeking relief from the state appellate court's March 25, 2005 adverse decision expired. <u>Butler</u>, 533 F.3d at 316-318. Under §2244(d), Toomer thus had until April 25, 2006,

within which to timely seek federal relief unless the one-year time period was tolled by the pendency of a properly-filed application for post-conviction relief or other collateral review.

On April 21, 2006, three days before the expiration of Toomer's statute of limitations, counsel filed with the state district court on Toomer's behalf an application for state post-conviction relief, thereby tolling prescription. Tolling then continued uninterrupted for the duration of the post-conviction proceedings, so long as Toomer sought supervisory review in a timely manner. Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-70 (5th Cir. 2004).

The State argues that tolling ceased in this case upon Toomer's failure to timely seek review of the trial court's August 21, 2008 decision denying his post-conviction application. Pursuant to Louisiana Uniform Rules of the Courts of Appeal Rule 4-3, Toomer had thirty days, until September 20, 2008, to timely file a writ application with the Louisiana First Circuit Court of Appeal. See Melancon v. Kaylo, 259 F.3d 401, 404-06 (5th Cir. 2001). It was not until three days later, on September 23, 2008, that counsel filed, on Toomer's behalf, a notice of intent to seek writs with the Louisiana First Circuit. (St. rec., vol. 1 of 6).[4]

---

[4]Despite the lateness of counsel's filing, the state district court ultimately granted Toomer an extension of time,

The Louisiana First Circuit Court of Appeal, in denying Toomer's writ application, made no mention of the fact that the application was untimely.   Instead, as noted earlier, the state appellate court issued a two-word decision, "[w]rit denied", rejecting Toomer post-conviction relief.   State v. Toomer, No. 2008-KW-2224 (La. App. 1 Cir. Dec. 19, 2008) (unpublished decision).  (St. Rec., vol. 1 of 6).

In Grillette, supra, the United States Fifth Circuit Court of Appeals faced a similar situation wherein petitioner's post-conviction writ application to the state appellate court was filed outside the thirty-day deadline, but the state appellate court, in rejecting the writ application, made no mention of the application's untimeliness.  Under these circumstances, the Fifth Circuit determined that prescription was tolled during the period the untimely writ application was pending before the state appellate court, reasoning:

> [A]t no point did the state trial court or the Louisiana Court of Appeal fault Grillette for failure to comply with Rule 4-3.  Whereas in Melancon, the Louisiana Court of Appeal expressly indicated that Melancon's application "appeared untimely," in this case it is undisputed that the Louisiana Court of Appeal disposed of Grillette's application "on the merits," without any notation that his application was time-barred.   We

---

until October 24, 2008, to file a post-conviction writ application with the Louisiana First Circuit Court of Appeal. (St. Rec., vol. 1 of 6).

acknowledge, as the State asserts, that a state court's consideration of an application "on the merits" is not by itself conclusive proof that the application was timely filed in accordance with that state's timeliness laws and rules and thus "pending." <u>See</u> [ <u>Carey v.</u>] <u>Saffold</u>, 536 U.S. [214,] 226, 122 S.Ct. 2134 [ (2002) ] (noting different reasons why a court might "address the merits of a claim that it believes was presented in an untimely way"). Rule 4-3, however, prohibits the Court of Appeal from considering the merits of an application that is not filed with the appellate court within the original or extended return date, "in the absence of a showing that the delay in filing was not due to the applicant's fault." Because the Court of Appeal did consider the merits of Grillette's application, it must have determined that the application was timely either because the trial court impliedly extended the return date and/or because the delay was not due to Grillette's fault.

Moreover, as Grillette correctly points out, when the denial of an application is based on untimeliness, Louisiana courts routinely and unmistakably indicate so in their opinions. <u>See</u>, <u>e.g.</u>, <u>Carter v. Rhea</u>, 785 So.2d 1022, 1022 (La. Ct. App. 4th Cir. 2001) ("WRIT APPLICATION DISMISSED AS UNTIMELY."); <u>Lawyer v. Succession of Kountz Through Cupit</u>, 703 So.2d 233, 233 (La. Ct. App. 4th Cir. 1997) ("WRIT NOT CONSIDERED."); <u>Watts v. Dorignac</u>, 681 So.2d 955, 955 (La. Ct. App. 1st Cir. 1996) ("WRIT NOT CONSIDERED"). Thus, had the Louisiana Court of Appeal decided to reach the merits of the application notwithstanding a determination that the application was untimely, it appears that the court would have indicated any such untimeliness in its opinion.

<u>Grillette</u>, 372 F.3d at 775.

In its decision to toll prescription despite the untimeliness of petitioner's writ application to the state appellate court, the <u>Grillette</u> court took note of factors reflecting due diligence on the part of Grillette in attempting to timely seek state post-

conviction relief. Specifically, the court pointed to the fact that Grillette "gave timely oral notice to the trial court of his intent to file a supervisory writ application and the trial court, by setting a return date beyond Rule 4-3's 30-day period . . . impliedly extended the return date under extenuating circumstances that were due to no fault [on the part of petitioner]." Id. at 771. Conversely, in cases where courts have declined to toll prescription based upon the untimeliness of a petitioner's post-conviction writ application to a Louisiana appellate court, the courts have specifically noted the lack of any circumstances reflecting due diligence on the part of the habeas petitioner.

In Johnson v. Warden, Louisiana State Penitentiary, 2007 WL 2350243, *2 (W.D. La. Aug. 6, 2007), a case in which prescription was not tolled, the court observed: "There is nothing in this record to suggest that there was any order extending or fixing a return date to a time later than the 30-day period provided by the rule, nor is there any suggestion that Petitioner ever moved for such relief." Similarly, in Peralta v. Cain, 2006 WL 2366387, *2 n.19 (E.D. La. Aug. 14, 2006), the court, in refusing to toll prescription, noted that there was no evidence in the state court record that petitioner actually filed a notice of intent to file a writ application. Thereafter, the court provided:

> [E]ven if that document were filed, it makes no
> difference. At the time petitioner signed the purported
> notice, his thirty-day period had already long expired.
> Moreover, in the purported notice, petitioner neither
> asked the trial court to set a return date nor requested
> an extension of the normal thirty-day period for seeking
> review. Further, there is no evidence in the state court
> record that the trial court set a return date beyond the
> thirty-day period, ever gave any assurances whatsoever
> that it would do so, or granted an extension.
> Accordingly, the thirty-day period applies and <u>Grillette</u>
> <u>v. Warden, Winn Correctional Center</u>, 372 F.3d 765 (5th
> Cir. 2004) is inapposite.

<u>Id</u>.

In the instant case, while counsel filed on Toomer's behalf a notice of his intent to file a writ application, this notice was not timely filed.[5] On the other hand, the state trial court did grant Toomer an extension of time to file his writ application and counsel filed, on Toomer's behalf, a writ application with the state appellate court on the extended due date. (Rec. doc. 7, State's response, p. 5).[6]

Based upon the above conflicting evidence regarding Toomer's diligence in seeking post-conviction relief, it is unclear whether, in accordance with <u>Grillette</u>, his one-year statute of limitations

---

[5]<u>See</u> discussion <u>supra</u> at p. 5.

[6]A copy of petitioner's writ application to the Louisiana First Circuit Court of Appeal is contained in the State Rec., vol. 1 of 6, but said copy is not filed-stamped nor is it dated.

should be tolled during the period his post-conviction application was pending before the Louisiana First Circuit. However, in an abundance of caution, this court will toll the statute of limitations during this time period. See Newman v. Cain, 2010 WL 1817771, *3 (E.D. La. April 12, 2010) (court, "out of an abundance of caution," tolled prescription despite untimeliness of petitioner's writ application to the Louisiana Fourth Circuit Court of Appeal); Bourgeois v. Bergeron, 2009 WL 5088756, *4 (E.D. La. Dec. 23, 2009) (court, "out of an abundance of caution," tolled prescription despite the fact that petitioner waited almost six years after the state trial court denied him post-conviction relief before filing a writ application with the state appellate court).

Accordingly, in the matter at hand this court finds that prescription commenced to run again on November 20, 2009, when the Louisiana Supreme Court denied Toomer's writ application. State v. Toomer, 25 So.3d 783, No. 2009-KP-0104 (La. 2009).[7] Toomer filed the instant action on November 23, 2009, the last day of his one-year prescriptive period. Thus, Toomer's federal habeas petition is timely.

---

[7]The State concedes that Toomer's post-conviction writ application to the Louisiana Supreme Court was timely filed. (Rec. doc. 7, State's response, p. 5).

**EXHAUSTION**

The State, in its response (rec. doc. 7, p. 6), claims that Toomer, with respect to two of his arguments in support of his ineffective assistance of counsel claim, has failed to exhaust his state court remedies as required under <u>Rose v. Lundy</u>, 455 U.S. 509 (1982). However, this Court chooses to proceed to address the merits of all of Toomer's arguments. Under the provisions of 28 U.S.C. §2254(b)(2), "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."

**<u>FACTS</u>**

Felicia Fox, the victim, and Toomer had a three-year relationship that ended two months before her death. Following their breakup, Fox had obtained a restraining order against Toomer. On May 23, 2002, Toomer entered Fox's trailer and held her at gunpoint until Fox's mother, Sandra Conerly, found him and called the police. Although Toomer was arrested, he was released from jail and bought a .38 snub-nose revolver the next day.

In the early morning hours of May 26, 2002, the Franklinton Police Department handled three separate 911 calls coming from Fox's residence. The first two complaints addressed the fact that

Toomer was trying to enter Fox's trailer. The third complaint was a 911 hang-up. When police officers responded to the last dispatched 911 call to Fox's residence, they discovered Fox had been fatally shot in a bathroom of her residence. Sergeant Michael Tate testified regarding a written statement given by Coley Wilson, who died of cancer prior to trial. Wilson, a friend who was in Fox's trailer at the time she was shot, stated that Toomer broke into the trailer, followed Fox into a bathroom and shot her inside the bathroom. Wilson told police that he fired one shot into the bathroom; Toomer left the bathroom, fought briefly with Wilson, then left the residence.

While attending to the scene at Fox's residence, police were notified pursuant to another 911 call that Toomer was at the home of his sister with a gunshot wound to his arm. When police arrived at the home of Toomer's sister, Toomer admitted entering Fox's residence using a screwdriver, following Fox into a bathroom and shooting her, and shooting once through the bathroom door in response to being shot at by someone outside of the bathroom. Toomer was taken to the hospital and arrested following his discharge.

**STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. §2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under §2254(d)(1) and questions of fact are reviewed under §2254(d)(2). <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1). The United States Supreme Court has noted:

> §2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in <u>Williams[ v.</u>

<u>Taylor</u>, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

<u>Bell v. Cone</u>, 535 U.S. 685 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2); <u>see</u> <u>also</u> <u>Hill</u>, 210 F.3d at 485; 28 U.S.C. §2254(e)(1).

## **<u>ANALYSIS</u>**

The seminal Supreme Court decision regarding ineffective assistance of counsel is <u>Strickland v. Washington</u>, 466 U.S. 668, 697 (1984), wherein the Court held that in order to prove that counsel was ineffective, petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. If a court finds that petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong.

Under the deficient performance prong of the <u>Strickland</u> test, "it is necessary to 'judge...counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's

14

conduct.'" <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993) (citing <u>Strickland</u>, 466 U.S. at 690). To prove prejudice under the <u>Strickland</u> standard, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.

Toomer alleges that posted in the courthouse "where the jury was being selected" was "[a] life-size cutout of a 'missing' woman [which] had the name of the victim in this case (Felicia M. Fox) on a card hung around her neck, with the information that the 'perpetrator' ws [sic] 'Robert Shelton Toomer' and that he was the 'estranged spouse' who had come 'to [the] victim's house and shot her after a recent arrest for aggravated assault of the victim.'" Toomer asserts that counsel was ineffective due to his failure, as a result of the above-described display, to request a continuance of the trial, seek to change the venue of the trial, move for a mistrial, and/or question prospective jurors with regard to the display. (Rec. doc. 1, p. 6).

This issue was addressed by the state trial court in connection with Toomer's application for post-conviction relief. In rejecting said claim, the trial court noted that it was based upon a misstatement of the facts. The court explained:

> For a short time **months prior to the trial** a poster
> giving the victim's name and saying she was murdered
> appeared in the lobby of the courthouse. This poster did
> not show the face of the victim, and it did not give the
> Petitioner's name or show his face. There was **no poster
> at or near the time of trial and no mention of this issue
> at that time**....

State v. Toomer, No. 02-CR9-85062, p. 4 (22nd JDC. Aug. 21, 2008)

(unpublished decision) (emphasis added) (St. rec., vol. 1 of 6).

The court concluded that since petitioner's claim was based upon a

misstatement of the facts, petitioner had "failed to provide any

evidence" to support his claim and, as such, had failed to satisfy

his burden of proof. Id.

Given the fact that the display about which Toomer complains

was not located in the courthouse during Toomer's trial, but

rather, months before, and there was no reference to the display at

trial, the Court finds that the state trial court properly denied

Toomer relief in connection with the instant claim. Stated

differently, the trial court's determination that counsel was not

ineffective due to his failure to request a continuance of trial,

seek a change of venue, move for a mistrial, and/or specifically

question prospective jurors with respect to the display, does not

represent an unreasonable application of Strickland to the facts of

this case.

Toomer next asserts that counsel was ineffective due to his refusal to allow him to testify at trial. Again, this claim was addressed by the state trial court in connection with Toomer's application for post-conviction relief. In rejecting said claim, the state court theorized that counsel may not have wanted Toomer to testify because of his prior conviction, a 1997 guilty plea to a charge of obscenity. The court reasoned that in light of Toomer's prior conviction, "[c]ounsel may well have prevented him from testifying as part of a calculated trial strategy." The court concluded: "Petitioner fails to articulate specific reasons which would prove his testimony would change the outcome of the trial. Thus, Petitioner's ... claim is without merit." State v. Toomer, No. 02-CR9-85062, p. 4 (22nd JDC. Aug. 21, 2008) (unpublished decision) (St. rec., vol. 1 of 6).

Once again, this Court finds that the above determination on the part of the state trial court does not represent an unreasonable application of Strickland to the facts of this case. As the Fifth Circuit elaborated in United States v. Garcia, 762 F.2d 1222, 1226 (5th Cir. 1985), a counsel's decision regarding whether to place a criminal defendant on the witness stand "is a 'judgment call' which should not easily be condemned with the benefit of hindsight."

17

Third, Toomer claims that counsel was ineffective in allowing the statement of Coley Wilson, who died prior to trial, to be admitted into evidence. However, a review of the trial transcript reflects that the admission of the evidence was not based upon any deficiency on the part of counsel. Counsel objected to the statement as being hearsay. The trial court, however, overruled the objection, finding the statement was admissible under the "present sense impression" exception to the hearsay rule since the statement was provided shortly after the murder took place. (St. rec., vol. 4 of 6, pp. 462-468).

Toomer also complains that counsel was ineffective due to his failure to impeach Wilson's statement by introducing evidence of Wilson's prior convictions. However, the statement itself does damage to Wilson's character. Wilson admits that upon hearing gunshots coming from the bathroom, rather than attempting to rescue the victim from the bathroom, he simply blindly fired a gunshot into the bathroom's closed door, not knowing whether he might hit the victim with a stray bullet. (St. rec., vol. 4 of 6, p. 469). Further, there was ample evidence, even without Wilson's statement, to support a finding that Toomer murdered the victim. As set forth above, Toomer admitted, when police arrived at his sister's house in response to a 911 call, that he entered the victim's residence

using a screwdriver, followed her into the bathroom, and shot her.[8]
Ballistics evidence established that the fatal wound came from
Toomer's gun.  Accordingly, the Court finds that Toomer has failed
to show the requisite prejudice associated with any deficiency on
the part of counsel in failing to introduce evidence of Wilson's
alleged prior convictions.

Finally, Toomer argues that counsel was ineffective due to
counsel's failure to object to the prosecutor's statement, during
closing argument, that there was no evidence to suggest that the
victim and Coley Wilson were anything but friends which was
contrary to Wilson's statement wherein he represented that he and
the victim were "messing around".  According to Toomer, counsel's
deficiency in this regard "effectively gutted" his manslaughter
defense.  (Rec. doc. 1, p. 11).

A review of defense counsel's closing argument reflects that
counsel vigorously argued his client's position, namely, that his
client shot the victim in the heat of blood because he was so upset
that his former girlfriend was now involved with Coley Wilson.
(St. rec., vol. 5 of 6, pp. 625-627).  The fact that the jury
rejected counsel's manslaughter defense and returned a verdict of
second degree murder, does not render counsel's representation, in

---

[8]See discussion supra at p. 7.

particular, his failure to object to the prosecution's comment that there was no evidence of a romantic relationship between the victim and Wilson, ineffective. As the Louisiana First Circuit Court of Appeal determined, in its ruling on Toomer's original appeal, there was ample evidence to support a finding that Toomer was guilty of second-degree murder, rather than manslaughter. Specifically, the court noted:

> The State established defendant had been threatening Fox for several days prior to the fatal shooting. The evidence proved defendant pried open Fox's trailer door, followed her into a bathroom as she tried to escape his presence, and shot her two times, once in the head, with the bullet lodging in her scalp, and once, fatally, in the chest. The jury rejected the notion that defendant was so upset over Wilson's presence at Fox's trailer that such a fact would constitute sufficient provocation to deprive an average person of self-control and cool reflection, especially considering that defendant had been threatening Fox for several days prior to killing her and had been told to leave her trailer area earlier that night....

State v. Toomer, No. 2004-KA-1603, p. 10 (La. App. 1 Cir. Mar. 24, 2005) (unpublished opinion).

Based upon the above, the court finds that Toomer has failed to satisfy his burden of proof for the purpose of proving ineffectiveness on the part of trial counsel. Accordingly;

## **RECOMMENDATION**

It is hereby **RECOMMENDED** that the instant application for

federal habeas corpus relief be **DISMISSED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. §636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996)(<u>en banc</u>).[9]

New Orleans, Louisiana, this 29th day of _____July_____, 2010.


_____
ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE


_____

[9]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to fourteen days.